Matter of Foster v FedEx Frgt. Inc. (2020 NY Slip Op 06423)





Matter of Foster v FedEx Frgt. Inc.


2020 NY Slip Op 06423


Decided on November 12, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 12, 2020

529821

[*1]In the Matter of the Claim of James Foster, Respondent,
v
Fedex Freight Inc., Appellant. Workers' Compensation Board, Respondent.

Calendar Date: October 16, 2020

Before: Lynch, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ.


The Chartwell Law Offices, LLP, New York City (Phillip J. Lagana of counsel), for appellant.
Grey & Grey, LLP, Farmingdale (Atasha Mahabir of counsel), for James Foster, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.



Lynch, J.P.
Appeal from a decision of the Workers' Compensation Board, filed January 28, 2019, which established claimant's average weekly wage.
On April 13, 2018, claimant, a city driver, was injured while attempting to sit in a chair at work. The self-insured employer and its third-party administrator subsequently submitted a C-240 form (Employer's Statement of Wage Earnings) indicating that, for the 52 weeks immediately preceding the date of the accident, claimant had worked 225 days and earned $53,125.85, plus bonuses in the amount of $800.61. Thereafter, during an October 2018 hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) established the claim for a work-related injury to claimant's lower back and, among other things, established claimant's average weekly wage at $1,198.37 using the 260 multiple because claimant worked substantially the whole of the year immediately preceding the injury as a five-day worker (see Workers' Compensation Law § 14 [1]). The employer and its third-party administrator interposed an exception and sought administrative review of the average weekly wage calculation. The Workers' Compensation Board affirmed, finding that, although it "has traditionally applied a 234-day guideline (as set forth on the form C-240) for determining whether a claimant worked substantially the whole of the [52-]week period preceding his or her accident," it recognized its discretion to find, based upon the record evidence before it, that claimant, by working 225 days, worked substantially the whole of the year as a five-day worker. The employer appeals, contending that the Board improperly applied the statute governing the calculation of weekly wages and therefore erroneously computed claimant's average weekly wage. We disagree and affirm.
Under the Workers' Compensation Law, an employee's average weekly wage is calculated by dividing his or her average annual earnings by 52 (see Workers' Compensation Law § 14 [4]). To that end, Workers' Compensation Law § 14 (1) provides that the average annual earnings of, as relevant here, a five-day worker who worked for his or her employer during "substantially the whole of the year immediately preceding the injury" shall be calculated by multiplying his or her daily wage by 260 (see Matter of Molina v Icon Parking LLC, 176 AD3d 1362, 1362-1363 [2019]; Employer: New Era Cap, 2007 WL 1600792, *3, 2007 NY Wrk Comp LEXIS 3300, *7-8 [WCB No. 8060 0990, Mar. 27, 2007]). In contrast, Workers' Compensation Law § 14 (2) sets forth the manner of calculating the average annual earnings of an employee who did not work "in such employment during substantially the whole of such year" and directs that the average annual earnings be calculated based upon the wages of a similarly situated worker who was so employed (see Matter of Molina v Icon Parking LLC, 176 AD3d at 1363; Matter of Sacco v Mast Adv./Publ., 71 AD3d 1304, 1307 [2010]). "Where the methods in Workers' Compensation Law § 14 (1) and (2) 'cannot reasonably and fairly be applied,' Workers' Compensation Law § 14 (3) provides an alternate method of calculating the employee's average annual earnings" (Matter of Molina v Icon Parking LLC, 176 AD3d at 1363, quoting Workers' Compensation Law § 14 [3]; see Belliamo v Marlin-Rockwell Corp., 215 App Div 845, 845-846 [1926]; Matter of Remo v Skenandoa Cotton Co., 189 App Div 367, 369 [1919]). This alternate method, which the employer argues should be applied here, utilizes "the previous earnings of the injured employee and of other employees" similarly situated (Workers' Compensation Law § 14 [3]; see Matter of Musto v Asplundh Tree, 259 AD2d 909, 910 [1999], lv dismissed 94 NY2d 797 [1999], lv denied 95 NY2d 760 [2000]), and the average weekly wage "shall reasonably represent the annual earning capacity of the injured employee" but consist of no less than 200 times the average daily wage, provided that the worker was fully available for employment before the injury (Workers' Compensation Law § 14 [3]; see Matter of Littler v Fuller Co., 223 NY 369, 372 [1918]; Matter of Bain v New Caps, LLC, 157 AD3d 1146, 1147 [2018]; Matter of Till v Chautauqua Opportunities, 252 AD2d 619, 620 [1998]).
As found by the Board, the record reflects that the employer and its third-party administrator indicated in several of their filings that claimant was a regular and/or full-time employee who worked a standard work week. Notably,[FN1] the C-240 form filed by the employer and its third-party administrator establishes that, in the 52 weeks immediately preceding claimant's injury, claimant worked 28 weeks, or 54% of the weeks in the year, as a five-day worker and the remaining 24 weeks as a four-day or less worker for a total of 225 days worked.
Although the C-240 form states that working a substantial part of the year would constitute 234 days — a guideline that the Board acknowledged that it traditionally applies — the statute does not require any particular number of days worked for a finding that an injured employee worked "substantially the whole of the year immediately preceding [the] injury" (Workers' Compensation Law § 14 [1]; see Workers' Compensation Board,
C-240 Employer's Statement of Wage Earnings [stating that "'[s]ubstantial part of the year' does not require any particular number of days worked but as a guideline 234 days at 5 days per week and 270 days at 6 days a week"]), and we decline to impose or adopt such a rule here. Inasmuch as the record evidence establishes that claimant worked the majority of the 52 weeks preceding his injury as a five-day worker for a total of 225 days, together with the fact that the employer regarded claimant as a full-time worker who worked a standard work week, we find that the Board's calculation of claimant's average weekly wage using the 260 multiple is supported by substantial evidence under the unique circumstances presented here (see Workers' Compensation Law § 14 [1]; Employer: Northwell Health Inc., 2019 WL 3249298, *3-4, 2019 NY Wrk Comp LEXIS 7230, *7-9 [WCB No. G213 3231, July 15, 2019]; Employer: Seminole Owners Corp., 2017 WL 1716952, *1, 2017 NY Wrk Comp LEXIS 4510, *3, 6-7 [WCB No. G171 3458, Mar. 24, 2017]; Employer: New Era Cap, 2007 WL 1600792 at *4). To the extent that we have not specifically addressed the employer's remaining contentions, they have been considered and found to be without merit.
Mulvey, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, with costs to claimant.



Footnotes

Footnote 1: We have previously held that a general finding that a claimant is a "'full-time' worker" would not by itself justify use of the 260 multiple, as more of a showing is required for use of that multiple (Matter of Andujar v More Candy Co., 42 AD2d 643, 643 [1973]). Such an approach "would be without statutory basis" given that Workers' Compensation Law § 14 (1) requires that a claimant work "substantially the whole of the year immediately preceding his [or her] injury" as a five-day or six-day worker, and the statute does "not speak in terms of 'full time' or of the number of the hours of employment" (Matter of Andujar v More Candy Co., 42 AD2d at 643).